UNITED STATES of America,
Appellee,

v.

Khung Chang KANG, Defendant–
Appellant.

No. 00–1163.

United States Court of Appeals,
Second Circuit.

Argued: Aug. 8, 2000

Decided: Aug. 21, 2000.

Sean Dennis Hill, Buffalo, NY, for Appellant.

Gretchen L. Wylegala, Assistant United States Attorney, Western District of New York, Buffalo, N.Y. (Denise E. O'Donnell, United States Attorney, Western District of New York, Buffalo, NY, on the brief) for Appellee.

Before: CALABRESI, CABRANES, and POOLER, Circuit Judges.

PER CURIAM.

On February 1, 1999, Khung Chang Kang was charged with alien smuggling, in violation of 8 U.S.C. § 1324. On September 20, 1999, Kang waived indictment and, pursuant to a plea agreement, entered a guilty plea to a violation of 8 U.S.C. § 1324(a)(1)(A)(ii). Before Kang was sentenced, the district court held an evidentiary hearing to determine whether, as the government contended, Kang's offense level should be increased under § 2L1.1(b)(5) of the United States Sentencing Guidelines because Kang's offense "involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." U.S.S.G. § 2L1.1(b)(5).

At the evidentiary hearing, the following evidence was presented. In the early morning on January 31, 1999, Kang attempted to smuggle four people, all Chinese women, from Canada to the United States. About one mile from the United States border, the four women were put on shelves constructed of plywood that were placed on beams under the commercial truck Kang was driving. These shelves were approximately 31 inches wide and were mounted 11 inches from the bottom of the truck. The shelves did not fit the bodies of the women. Instead, only their torsos were supported by the wood; their feet were propped up by cross-bars running beneath the truck. Thus, the two women who were on the shelf located near the front of the truck had their legs suspended over the mechanical parts of the truck, including the drive shaft, while the two in the rear had their legs suspended with full exposure to the road.[1] When Kang attempted to cross the border, the temperature was between 4 and 10 degrees Fahrenheit.

At the border, Kang stopped to present himself for admission to the United States. He told the inspector that his truck was empty. The inspector went to the rear of the vehicle to insure that it was, in fact, empty. While surveying the truck with her flashlight, the inspector noticed denim and hair hanging from the truck; she immediately called for assistance. Another inspector, Mike Everett, then crawled under the truck. He saw the two heads of the women located towards the front of the truck and touched them but got no response. He shook the women and grabbed their hair and still got no reaction. Believing that the women were unconscious, Everett felt for breathing and a pulse. He felt no pulse on one of the women and only a light pulse on the second. He therefore called the rescue squad. While waiting for the emergency medical personnel, Everett tried to remove the women from the shelf, but was unable to do so. When the rescue squad arrived, they administered oxygen to the women. They also sawed the plywood shelf in two so that the women could be taken to the hospital. The women, who were not found to have suffered carbon monoxide poisoning or any other serious injury, were later released into INS custody.

The two women on the shelf towards the rear of the truck responded to Everett's shouts and shimmied out of the space on their own. They too were taken into INS custody.

After hearing this evidence, the district court concluded that an increase in Kang's offense level, from 12 to 18, was appropriate under U.S.S.G. § 2L1.1(b)(5) because Kang had "recklessly creat[ed] a substantial risk of death or serious bodily injury to another person." It sentenced Kang to 18 months' imprisonment, two years of supervised release, and a $100 special assessment. Kang timely appealed.

■ We review a district court's interpretation of the Sentencing Guidelines *de novo*, its findings of fact for clear error, and, in cases such as this one, its applica-

---

1. Multiple photographs of the truck and the shelves located underneath the truck were submitted into evidence by the government.

tion of the Guidelines to the facts for abuse of discretion. *See United States v. Fernandez*, 127 F.3d 277, 283 (2d Cir.1997); *United States v. Hernandez–Santiago*, 92 F.3d 97, 100 (2d Cir.1996).

■ Kang argues first that the district court failed to make findings of fact in support of its determination. But the facts that supported the district court's determination to enhance under § 2L1.1(b)(5), that is, that the women were transported on very narrow shelves that supported only half of their bodies underneath a moving commercial truck, are not disputed. As such, there was no need for the district court to state its findings separately from its ruling. *Cf. United States v. Reed*, 49 F.3d 895, 900–01 (2d Cir.1995) ("When the sentencing court resolves *a disputed issue of fact*, it is required to state its findings with sufficient clarity to permit appellate review." (emphasis added)). In any event, in this case, the district court did make clear that it was most concerned with "this haphazard way of hanging the people under" the truck, and that determination is sufficiently specific to permit appellate review.

■ Kang also argues that the district court abused its discretion in holding that Kang's actions justified an enhancement under U.S.S.G. § 2L1.1(b)(5). We disagree. Transporting aliens on a shelf underneath a moving truck with at least half of their bodies exposed either to the drive shaft or to the road and outside elements is enough to support a finding that he "recklessly creat[ed] a substantial risk of . . . serious bodily injury." U.S.S.G. § 2L1.1(b)(5). Indeed, Application Note 6 to this guideline provides that "[r]eckless conduct to which the adjustment from subsection (b)(5) applies includes a wide variety of conduct" including "transporting persons in the trunk or engine compartment of a motor vehicle." U.S.S.G. § 2L1.1 comment. (n.6). We would be hard pressed to conclude that placing passengers on a very small shelf underneath a truck, and thereby exposing a substantial part of their bodies either to the road or to the mechanical parts of the truck, did not pose at least as much danger of serious bodily harm as putting passengers in the trunk of a car.

Appellant argues that the Ninth Circuit's decision to vacate a § 2L1.1(b)(5) enhancement in *United States v. Dixon*, 201 F.3d 1223 (9th Cir.2000), supports his position. In *Dixon*, however, the court of appeals held that the district court had erroneously conflated riding in the hatchback area of a car with riding in a car's trunk, despite the obvious differences in passengers' access to a supply of oxygen and their ability to extricate themselves in the event of an emergency. *See id.* at 1233. Here, the aliens were far less able to leave the vehicle, and far more exposed to the dangers of the road, the elements, and the truck's moving parts, than a passenger in the hatchback portion of a car's interior.

Kang makes much of the fact that the women who rode on the shelves ultimately did not suffer any serious bodily injury. That, of course, is beside the point. Section 2L1.1(b)(5) only requires that Kang at least "recklessly creat[ed] a substantial risk of . . . serious bodily harm." It does not require that actual bodily harm be sustained. Indeed, if the women had been injured, the increase in offense level would be determined under U.S.S.G. § 2L1.1(b)(6), not U.S.S.G. § 2L1.1(b)(5). Accordingly, we hold that the district court did not abuse its discretion in enhancing Kang's offense level under § 2L1.1(b)(5).

We have considered all of Kang's arguments and find them without merit. We therefore AFFIRM the judgment of the district court.