REVISED AUGUST 7, 2002

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-50947
_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KIMBER LEE CUYLER, JR.,

Defendant - Appellant.

_____

Appeal from the United States District Court for the
Western District of Texas, San Antonio Division

_____

July 15, 2002

Before KING, Chief Judge, and JOLLY and DEMOSS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The defendant, Kimber Lee Cuyler ("Cuyler"), appeals the enhancement of his sentence. He pled guilty to two counts of aiding and abetting the transportation of illegal aliens, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(A)(v)(II). The district court held that Cuyler's transportation of illegal aliens in the bed of his pickup truck, while driving on the highway, intentionally or recklessly created a substantial risk of death or serious bodily injury to the aliens, under U.S.S.G. § 2L1.1(b)(5) (2000) ("§ 2L1.1(b)(5)"). This finding resulted in an increase in Cuyler's base offense level from thirteen to fifteen, and an increase in his sentencing guideline range from twelve to eighteen months,

to eighteen to twenty-four months. The district court sentenced Cuyler to eighteen months' imprisonment, a two year term of supervised release, and a $200 special assessment. Cuyler challenges the application of § 2L1.1(b)(5) to his offense. We have not decided this precise question before, that is, whether transporting aliens in the bed of a pickup truck recklessly creates a substantial risk of injury to the aliens. We AFFIRM the sentence.

I

The facts in this case are undisputed. Maurelio Martinez-Eguia recruited Cuyler to drive undocumented aliens from San Antonio, Texas to Houston, Texas in exchange for money. Cuyler was driving Martinez-Eguia and nine additional undocumented aliens on Interstate Highway 10 in his one-ton, extended cab pickup truck when he was stopped by police. There were seven people riding in the cab of the truck, and four people lying down in the bed of the pickup. There were only six seatbelts in the cab of the truck. Cuyler was arrested, and ultimately pled guilty to two counts of unlawfully transporting illegal aliens. The Pre-Sentence Report ("PSR") recommended that Cuyler's offense level be increased to eighteen under § 2L1.1(b)(5), which provides for an increase in the offense level by two levels, to a minimum level of eighteen, "[i]f the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person . . . ." Cuyler objected to this recommendation. The district court overruled Cuyler's objection and accepted the PSR. In holding that Cuyler's offense level should be increased under § 2L1.1(b)(5), the district court stated:

> The Court finds that there was a dangerous situation when you are on a highway and you have people in the back of your pickup truck, and I am more concerned with those that were in the back of the bed of the truck. Even though it is not against the law for adults to be back there, it is a dangerous situation. There is a law as far as minors being in the back of a truck, and I think that is evidence that it is a dangerous situation. There was not enough room for all of these people in the front, so they

2

were forced to be put in the bed of the truck, and it does cause for a dangerous situation. So I think that the additional points for putting these people in a dangerous situation [are] warranted, and the Court is going to overrule the objections filed in the case and accept the report as prepared.

After increasing the offense level to eighteen, the court reduced the level to fifteen for acceptance of responsibility. The court sentenced Cuyler to eighteen months' imprisonment, at the bottom of the eighteen to twenty-four month guideline range. Cuyler's attorney noted his objection to the application of this section again at the sentencing hearing. Cuyler timely appealed.

II

The issue presented in this case is whether Cuyler's transportation of four illegal aliens in the bed of his pickup truck on the highway "involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person" under § 2L1.1(b)(5). Our court has not previously addressed this precise issue. We review the district court's application of the sentencing guidelines *de novo,* and its findings of fact for clear error. United States v. Stevenson, 126 F.3d 662, 664 (5th Cir. 1997) (citation omitted). We uphold a sentence imposed under the guidelines unless it is imposed in violation of law, is the result of incorrect application of the guidelines, or is an unreasonable departure from the applicable guideline range. United States v. Anderson, 5 F.3d 795, 798 (5th Cir. 1993) (citations omitted).

The commentary to § 2L1.1(b)(5) provides examples of conduct that fall within the guideline:

> Reckless conduct to which the adjustment from subsection (b)(5) applies includes a wide variety of conduct (e.g., transporting persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous, or inhumane condition).

U.S.S.G. § 2L1.1, Application Note 6 (2000).

Cuyler cites the Ninth Circuit's opinion in United States v. Dixon, 201 F.3d 1223 (9th Cir.

3

2001) to support his argument that his conduct does not fall under § 2L1.1(b)(5). In Dixon, the Ninth Circuit held that the district court erred in increasing the defendant's offense level under § 2L1.1(b)(5) based on the defendant transporting two illegal aliens in the hatchback area of his car. Id. at 1234. The court found that unlike a trunk, a person in the hatchback area could easily extricate himself. Id. at 1233. Further, there was no evidence that the hatchback area was airtight, thereby depriving the person inside of oxygen. Id.

It is certainly true that a bed of a pickup truck allows a person access to oxygen and that a person could easily extricate himself from the bed. These factors do not the limit the guideline, however. Application Note 6 makes clear that "reckless conduct" under the guideline applies to a wide variety of conduct. The illegal aliens were unrestrained in the bed of the pickup, and easily could have been thrown from the truck and almost certainly would have been injured in the event of an accident. Although, as Cuyler points out, it is not illegal under Texas law for adults to ride in the bed of a pickup truck, it is illegal for children to ride in the bed of a pickup.[1] Obviously, allowing passengers to ride in the bed of a pickup truck creates danger in many situations.

We have not found any published opinions that address whether transporting aliens in the bed of a pickup truck on the highway falls under § 2L1.1(b)(5). However, three unpublished Ninth Circuit opinions have all found that smuggling aliens in the bed of a pickup truck warrants an offense level increase under § 2L1.1(b)(5).[2] These unpublished opinions of another circuit of course have

_____

[1]See Tex. Trans. Code Ann. § 545.414 (Vernon 1999) (making it illegal to drive more than 35 miles per hour with a child younger than 12 in the bed of a truck). As of September 1, 2001, this section was amended to prohibit anyone under the age of 18 from riding in the bed of a truck, regardless of the truck's speed. See Tex. Trans. Code Ann. § 545.414 (Vernon Supp. 2001).

[2]See United States v. Luna-Moreno, 10 Fed. Appx. 638, 639, 2001 WL 615284, *1 (9th Cir.) (transporting ten people on the highway in the bed of a pickup truck protected only by a camper shell

no precedential value. The logic, however, that smuggling illegal aliens in the bed of a pickup on the highway is dangerous nevertheless applies.

Numerous other cases have found that § 2L1.1(b)(5) applies in cases where the defendant smuggled aliens in an overcrowded van, often without seats or seatbelts. See United States v. Jose-Gonzalez, 2002 WL 1056556 (10th Cir.) (affirming district court's departure from sentencing guidelines in sentencing defendant who transported illegal aliens and had a car accident, resulting in the deaths of three illegal aliens and injuries to ten other illegal aliens; appellate court did not question application of § 2L1.1(b)(5)); United States v. Ramirez-Martinez, 273 F.3d 903, 916 (9th Cir. 2001) ("[P]utting twenty people in a dilapidated van without seats or seat belts undoubtedly constitutes 'carrying substantially more passengers than the rated capacity of a motor vehicle . . ., or harboring persons in a crowded, dangerous, or inhumane condition."; affirming increase in offense level under § 2L1.1(b)(5)) (citation omitted); United States v. Angwin, 271 F.3d 786, 808-09 (9th Cir. 2001) (district court did not abuse its discretion in applying § 2L1.1(b)(5) when there were sixteen people in motor home rated for six people, aliens were crowded into small compartments, and none of the aliens were seated or wearing a seatbelt); United States v. Ortiz, 242 F.3d 1078, 1078-79 (8th Cir. 2001) (district court did not clearly err in applying § 2L1.1(b)(5) when defendant transported 23

---

warranted an increased offense level under § 2L1.1(b)(5); bed of a pickup has no seats, no seatbelts, and offers less protection than the passenger compartment of a van); United States v. Reyes-Maro, 238 F.3d 433, 2000 WL 1433633, *1 (9th Cir.) (upholding application of § 2L1.1(b)(5) to defendant who transported eleven aliens in the back of pickup truck at highway speeds; conduct was reckless without respect to whether the truck was technically overloaded or not; also noting that it is illegal in California to carry a passenger in the bed of a pickup truck on the highway without restraints); United States v. Luna, 152 F.3d 930, 1998 WL 416501, *1 (9th Cir.) (upholding application of § 2L1.1(b)(5) to a defendant who transported eleven aliens in the bed of a pickup truck, took no steps to assure their safety, refused to stop when pursued by border patrol agents, and kept driving until his truck ran over a tire-puncturing device and all four tires blew out).

illegal aliens in van designed to accommodate 14 people, there were not enough seatbelts in the van, and the van overturned, injuring the passengers); United States v. Rio-Baena, 247 F.3d 722, 723 (8th Cir. 2001) (no clear error in applying § 2L1.1(b)(5) when defendant crowded 21 illegal aliens into back of cargo van without seats or seatbelts); United States v. Hernandez-Guardado, 228 F.3d 1017, 1027-28 (9th Cir. 2000) (no clear error in applying § 2L1.1(b)(5) when defendants transported illegal aliens in overcrowded vans on numerous occasions). The risks of unrestrained passengers in a van with no seats are akin to the risks of an unrestrained passenger in the bed of a pickup truck with no seats. In fact, the risk to the passengers in the pickup bed is greater, as they are not protected by the passenger compartment of the vehicle.

Cuyler argues that § 2L1.1(b)(5) is reserved for more "serious" situations than that presented here. He points to United States v. Rodriguez-Cruz, 255 F.3d 1054, 1059 (9th Cir. 2001), in which the court held that the district court did not abuse its discretion in applying § 2L1.1(b)(5) to defendants who attempted to smuggle twenty aliens through the mountains on foot with obviously inadequate food, water, clothing, and protection from the elements, and the defendants were aware of the potentially dangerous conditions. He also cites United States v. Kang, 225 F.3d 260, 261 (2d Cir. 2000), in which the court upheld the application § 2L1.1(b)(5) to the transportation of four illegal aliens on narrow plywood shelves placed on the beams underneath a truck. The shelves supported only the women's torsos, and their feet were propped up on the cross-bars beneath the truck. Id.

However, the issue is not whether the situation created by the crime in this case is similarly dangerous to those in the cases he cites. Instead, the issue is whether this particular offense "intentionally or recklessly creat[ed] a substantial risk of death or serious bodily injury to another person." The defendant transported illegal aliens for money, knowing that the persons involved were

6

illegal aliens.  Aliens who are unrestrained easily can be thrown from the bed of the pickup in the event of an accident or other driving maneuver of the sort that is unavoidable in highway driving.  The offense in this appeal meets the requirements of § 2L1.1(b)(5).

III

The district court properly held that § 2L1.1(b)(5) applies to the smuggling of aliens in the bed of a pickup truck while driving on the highway.  Cuyler's sentence is

AFFIRMED.