[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
March 25, 2004
THOMAS K. KAHN
CLERK

No. 03-12040

D. C. Docket No. 02-20899 CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

OMAR RODRIGUEZ-LOPEZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Florida

**(March 25, 2004)**

Before DUBINA, BARKETT and COX, Circuit Judges.

DUBINA, Circuit Judge:

Appellant Omar Rodriguez-Lopez ("Rodriguez-Lopez") appeals his sentence

of 18 months imposed following his guilty plea for conspiracy and alien

smuggling, in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(2)(A),

respectively. Rodriguez-Lopez contends that the district court erred by misapplying USSG § 2L1.1(b)(5), which provides for a two-level enhancement when a smuggling offense "involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person." USSG § 2L1.1(b)(5). For the reasons that follow, we affirm.

## I. BACKGROUND

A. Facts

On October 12, 2002, a United States Coast Guard aircraft spotted a speed boat, or "go-fast" boat, traveling northbound from Cuba toward the Florida Keys. Several Coast Guard cutters converged on the area and began tracking the vessel by radar. That evening, the Coast Guard deployed a team of officers on board a 27-foot "safe boat" to intercept the go-fast boat. The team first spotted the go-fast boat around midnight.

The Coast Guard team eventually maneuvered within 15 yards of the go-fast boat, and, with blue lights illuminated, used a megaphone to identify themselves, in both English and Spanish, and to instruct the people driving the boat to stop. The go-fast boat refused to stop, however, compelling the Coast Guard vessel to engage in a high-speed chase, at night, in three-to-four foot seas. During the chase, which lasted for approximately 20 minutes, the go-fast boat maintained a speed of at least

2

30 knots. In addition, the go-fast boat repeatedly made sharp turns toward the Coast Guard vessel, forcing the Coast Guard vessel to take evasive maneuvers to avoid being hit. Eventually, three Customs Service boats also entered the chase.

During the chase, Coast Guard and Customs officers observed a male suspect at the helm of the boat, later identified as Delvis Garcia-Santos ("Garcia-Santos"), Rodriguez-Lopez's co-defendant. Rodriguez-Lopez was standing next to Garcia-Santos and appeared to be directing the movements of the vessel.

The officers also noted 22 passengers on the go-fast boat, including seven children. Officers observed these passengers being violently tossed around and bouncing into each other during the chase. Significantly, none of the people on the boat were wearing life jackets.

Eventually, Customs officers used pepper spray, a chemical irritant, to disable Garcia-Santos, causing him to take his hands off the wheel and throttles of the go-fast boat. At that point, Rodriguez-Lopez took the helm of the go-fast boat. Customs officials then pepper sprayed Rodriguez-Lopez as well, and Rodriguez-Lopez stopped the boat.

B. Procedural History

A federal grand jury in the Southern District of Florida returned a 23 count indictment against Rodriguez-Lopez and Garcia-Santos. Count 1 alleged that, on or about October 12, 2002, the defendants conspired to bring 22 aliens to the United States, knowing and in reckless disregard of the fact that such aliens had not received prior official authorization to come to, enter, and reside in the United States. Counts 2 through 23 alleged the substantive alien smuggling offenses, each count representing a different alien. Each count in the indictment constituted a misdemeanor offense.

Garcia-Santos entered a guilty plea to Counts 1 through 3 of the indictment. After sentencing, he declined to take an appeal. Ultimately, Rodriguez-Lopez entered a plea of guilty to Counts 1 through 3 based on the same factual proffer as that of Garcia-Santos. The government agreed to dismiss the remaining counts of the indictment and to recommend that Rodriguez-Lopez receive a full three-level reduction for acceptance of responsibility as well as an additional three-level reduction because the offense was committed other than for profit, pursuant to USSG § 2L1.1(b)(1)(A).

Prior to sentencing, the United States Probation Office prepared a Presentence Investigation Report ("PSI"), which recommended a base offense level of 12, pursuant to USSG § 2L1.1(a)(2), the guideline for alien smuggling offenses;

4

a three-level reduction because the offense was not committed for profit, pursuant to § 2L1.1(b)(1)(A); a three-level enhancement, pursuant to § 2L1.1(b)(5), because the offense involved a substantial risk of death or serious bodily injury; and a three-level reduction for acceptance of responsibility, pursuant to USSG § 3E1.1, resulting in a total offense level of 15.

After a joint two-day sentencing hearing, the district court made findings of fact and adopted the PSI's recommendations, including an application of the § 2L1.1(b)(5) enhancement to both Rodriguez-Lopez and Garcia-Santos. With respect to the applicability of the § 2L1.1(b)(5) enhancement, the district court commented:

> The concern that I have is the chase. That is what concerns me is that although there is no dispute that there were clearly marked vessels, duly authorized with lights and loudspeakers going instructing to stop, not only did they fail to stop, they kept at the same high rate of speed, made veering actions that required others, the law enforcement to take evasive actions. And it wasn't once, it wasn't twice, it was three times. And it was only after the administering of the pepper spray, which again endangered people and it had to be done twice because when the original helmsman had to step back, the other defendant stood up and took the helm and kept on going.

[R. Vol. 4 at pp. 110-11]. Additionally, the district court expressed concern that the defendants engaged United States authorities in this chase with an insufficient

5

number of life jackets on board the vessel.[1] The district court then found that this high-speed chase, conducted in choppy seas, with no one on board wearing a life jacket, created a substantial risk of accident resulting in death.

Notwithstanding the risk of death to their passengers that the defendants created during the chase, the district court expressed concerns about applying the § 2.L1(b)(5) enhancement to Rodriguez-Lopez. The district court found that Rodriguez-Lopez was just the navigator for most of the chase and took the helm of the go-fast boat only briefly, and only after Garcia-Santos was pepper sprayed. Nonetheless, the district court concluded that the enhancement was applicable, based on its finding that Rodriguez-Lopez assumed control of the go-fast boat and continued the chase, even if only briefly, and did not stop the chase until after he was pepper sprayed as well.

The district court sentenced Rodriguez-Lopez to a term of 18 months imprisonment, the lowest possible term of imprisonment within the applicable guideline range: 12 months for Count 1, and 6 months each for Counts 2 and 3, to

---

[1]The district court commented:

 "[W]hat about the fact that you are traveling at 30 knots on this type of sea in the dark with no one knowing where you are, you have 22 other human beings . . . and they have no life preservers, particularly no life preservers for the children . . . . The facts are . . . that there were several life preservers. Several usually means four or five. There were seven children. There were 22 aliens all totaled."

[R. Vol. 4 at pp. 133-34].

6

run concurrently with each other and consecutive to Count 1. Rodriguez-Lopez then perfected this appeal.

## II. ISSUE

Whether the district court properly enhanced Rodriguez-Lopez's sentence under USSG § 2L1.1(b)(5).

## III. STANDARD OF REVIEW

With respect to sentencing guideline issues, this court reviews purely legal questions *de novo*, a district court's factual findings for clear error, and, in most cases, a district court's application of the guidelines to the facts with "due deference." *United States v. White*, 335 F.3d 1314, 1317 (11th Cir. 2003).[2] For a factual finding to be "clearly erroneous," this court, "after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed." *United States v. Foster*, 155 F.3d 1329, 1331 (11th Cir. 1998).

---

[2]Relying on dicta in *United States v. Williams*, 340 F.3d 1231 (11th Cir. 2003), the dissent contends that we should review the district court's "detailed factual findings" *de novo*. *See United States v. Miranda*, 348 F.3d 1322, 1330 n.8 (11th Cir. 2003) (concluding that, because the holding of *Williams* concerned "the standard of review only for a challenge to the district court's grouping of a defendant's offenses, . . . *William's* remaining discussion is primarily dicta and, therefore, not binding on this Court"). However, the dissent misreads this discussion in *Williams*, which concerns only the appropriate "due deference" that we must accord a sentencing judge's application of the guidelines to the facts. Contrary to the dissent's suggestion, *Williams* in no way contradicts our uniform precedent, which "requir[es] us to review district courts' factual findings under 'clear error' (or 'clearly erroneous') standard." *Williams*, 340 F.3d at 1234. Moreover, in order to accept the dissent's position, we would have to ignore the clear and unambiguous directive of Congress that we "*shall* accept the findings of fact of the district court unless they are clearly erroneous." 18 U.S.C. § 3742(e) (emphasis added). We decline to do so.

7

## IV.  DISCUSSION

As an initial matter, we conclude that no merit exists in Rodriguez-Lopez's argument that the district court should have applied USSG § 3C1.2 instead of § 2L1.1(b)(5).  The sentencing guideline's general application principles instruct the district court to apply the base offense level plus any specific offense characteristics in chapter two before applying any chapter three adjustments.  *See* USSG § 1B1.1(b), (c).  In addition, the commentary itself, which is binding, indicates that § 3C1.2 should not apply if the court has enhanced a defendant's sentence under § 2L1.1(b)(5) "on the basis of conduct related to fleeing from a law enforcement officer."  USSG § 2L1.1, comment. (n.6); *see also Stinson v. United States*, 508 U.S. 36, 38; 113 S. Ct. 1913, 1915; 123 L. Ed. 2d 598 (1993) (holding that a guideline's application notes are binding unless inconsistent with the Constitution, a federal statute, or the guideline itself).

We further conclude that the district court did not clearly err in its enhancement of Rodriguez-Lopez's offense level pursuant to USSG § 2L1.1(b)(5), based on its determination that Rodriguez-Lopez and Garcia-Santos created a substantial risk of death or serious bodily injury to the 22 Cuban nationals that they were transporting from Cuba to the United States.  The record demonstrates that the vessel sped through three-to-four foot seas at nighttime while the 22 aliens

8

aboard the vessel were not wearing life jackets, that insufficient life jackets were available if needed, and that the drivers attempted on several occasions to ram or shoulder pursuing vessels from the United States Coast Guard and Customs Service, refusing to stop until after both Rodriguez-Lopez and Garcia-Santos were exposed to pepper spray.[3]

Importantly, the applicable commentary to § 2L1.1(b)(5) of the sentencing guidelines emphasizes that this provision applies to an array of factual scenarios and should be applied flexibly:

> Reckless conduct to which the adjustment from subsection (b)(5) applies includes a wide variety of conduct (e.g., transporting persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous, or inhumane condition).

USSG § 2L1.1, comment. (n.6). The district court's findings and application of the § 2L1.1(b)(5) enhancement are clearly consistent with the commentary's

---

[3]While the dissent contends that we "mis-frame [our] entire analysis by lumping the very distinct actions of Garcia-Santos with those of Rodriguez-Lopez," the district court found that both Garcia-Santos and Rodriguez-Lopez took the helm of the go-fast boat during the chase. Although the record is clear that Garcia-Santos operated the boat for a longer period of time, the § 2L1.1(b)(5) enhancement contains no temporal limitation. The district court specifically found that both Garcia-Santos and Rodriguez-Lopez participated in a dangerous high speed chase until both were subdued by pepper spray. Thus, regardless of whether Garcia-Santos operated the boat for the majority of the chase, both defendants were equally responsible for "recklessly creating a substantial risk of death or serious bodily injury" to their human cargo.

9

instruction to apply the enhancement broadly to circumstances where alien smugglers subject others to "crowded, dangerous, or inhumane condition[s]." *Id.*

The application of the enhancement in this case is also consistent with the existing case law upholding the application of the § 2L1.1(b)(5) enhancement. Our circuit has addressed the enhancement in two unpublished opinions arising under similar factual scenarios, and, in both instances, we affirmed the district court's application of the enhancement.[4] Our sister circuits have also upheld the application of the enhancement in situations analogous to circumstances of this case. For example, other courts have consistently applied the enhancement to alien smugglers who transport aliens on roadways without sufficient seats or seat belts. *See, e.g.*, *United States v. Cuyler*, 298 F.3d 387, 391 (5th Cir. 2002) ("Aliens who are unrestrained easily can be thrown from the bed of the pickup in the event of an accident or other driving maneuver of the sort that is unavoidable in highway driving."); *United States v. Ramirez-Martinez*, 273 F.3d 903, 916 (9th Cir. 2001) (holding that application of the enhancement was appropriate where the defendant transported 20 people in a van without seats or seat belts); *United States v. Angwin*, 271 F.3d 786, 808-09 (9th Cir. 2001) (affirming application of the enhancement

[4]*See United States v. Lewis Romero-Larreinga*, Nos. 02-14838 and 02-14841 (11th Cir. Feb. 24, 2003), and *United States v. Cardet*, No. 01-16987 (11th Cir. Dec. 16, 2002). While unpublished opinions are not binding on this court, they may nonetheless be cited as persuasive authority. *United States v. Futrell*, 209 F.3d 1286, 1289 (11th Cir. 2000) (citing 11th Cir. R. 36-2).

where aliens were transported in a crowded motor home and were not seated or wearing seat belts); *United States v. Ortiz*, 242 F.3d 1078, 1078-79 (8th Cir. 2001) (affirming application of the enhancement when the defendant transported 23 aliens in a van equipped with seat belts for only 14). We find no material distinction between smugglers who transport aliens in motor vehicles without providing them with adequate safety measures, and the present case where Rodriguez-Lopez and Garcia-Santos operated a boat in a hazardous manner while transporting aliens who were not wearing life jackets.

In sum, the record demonstrates that the district court did not clearly err in finding that Rodriguez-Lopez's participation in the high speed chase created a substantial risk of death or serious bodily injury to the aliens that he was transporting. Because we conclude that the district court properly applied the § 2L1.1(b)(5) enhancement, we affirm Rodriguez-Lopez's sentence.

**AFFIRMED.**

11

BARKETT, Circuit Judge, dissenting:

I respectfully dissent. Although I believe the majority applies the wrong standard of review, this case warrants reversal even under a clear error standard. The majority's basic legal analysis is uncontroversial–I do not disagree that engaging in a high speed chase lasting nearly twenty minutes on high seas in the middle of the night on a crowded boat that has few life preservers and attempting to ram a Coast Guard boat would warrant a reckless endangerment enhancement. My objection is that this set of facts has almost <u>no</u> applicability to Rodriguez-Lopez. According to both the record and the district court's factual findings, the driver of the boat during virtually the entire chase was <u>not</u> Rodriguez-Lopez, but his co-defendant Garcia-Santos. Thus, the majority mis-frames its entire analysis by lumping the very distinct actions of Garcia-Santos with those of Rodriguez-Lopez.[1] The only question before us is whether Rodriguez-Lopez's sentence should be substantially enhanced for "recklessly <u>creating</u> a substantial risk of death

---

[1]Although the majority notices in its "Procedural History" section that Rodriguez-Lopez "took the helm of the go-fast boat only briefly," Dubina Opinion at 6, this fact is totally ignored by the majority in its legal analysis. <u>See</u> Dubina Opinion at 8 ("The record demonstrates that the vessel sped through three-to-four foot seas at nighttime while the 22 aliens aboard the vessel were not wearing life jackets, and that the drivers attempted on several occasions to ram or shoulder pursuing vessels from the United States Coast Guard and Customs Service, refusing to stop until after both Rodriguez-Lopez and Garcia-Santos were exposed to pepper spray."); <u>Id.</u> at 10 ("We find no material distinction between smugglers who transport aliens in motor vehicles without providing them with adequate safety measures, and the present case where the Rodriguez-Lopez and Garcia-Santos operated a boat in a hazardous manner while transporting aliens who were not wearing life jackets.").

12

or serious bodily injury" because he took control of a driverless speeding boat for a matter of seconds[2] and safely ending the chase by shutting the boat down.

First, I believe that because the pertinent facts can "clearly be set forth in detailed, non-conclusory findings by the district court," de novo review is appropriate. See United States v. Williams, 340 F.3d 1231, 1241 (11th Cir. 2003).[3] In this case, the district court clearly set forth detailed factual findings and then, after entertaining debate about the legal effect of the factual findings, finally determined that U.S.S.G. 2L1.1(b)(5) enhancement did apply, stating that "if I am wrong the Court of Appeals will let me know." This court therefore should review the factual findings of the district court for clear error, and review de novo the district court's interpretation of the legal application of 2L1.1(b)(5) to those facts.

In my judgment, the district court's factual findings, without more, do not constitute a sufficient basis for applying U.S.S.G. § 2L1.1(b)(5)'s enhancement to

---

[2]The district concluded that Rodriguez-Lopez was at the helm for only "moments." At oral argument, both counsel agreed that the "spirit of the testimony" was that Rodriguez-Lopez was at the helm for only "a matter of seconds or a minute."

[3]It is well-established that "[i]n Sentencing Guidelines cases, we review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error." United States v. Hall, 312 F.3d 1250, 1261 (11th Cir. 2002)(emphasis added)(internal citations and punctuation omitted). The majority fails to differentiate between the district court's factual findings of the events in question and the district court's separate determination that U.S.S.G. § 2L1.1(b)(5) applies, thus deviating from "our usual practice [of] examin[ing] the district court's application of the law to the facts separately." Williams, 340 F.3d at 1243. This is not a case where the "question of the applicability of a guideline . . . practically answers itself." Id. at 1242.

Rodriguez-Lopez. Rodriguez-Lopez's co-defendant Garcia-Santos was responsible for the dangerous chase. In the words of the district court, Rodriguez-Lopez's role was "much more minor."[4] According to the district court, "the only" facts that could support an application of the enhancement to Rodriguez-Lopez are the facts that during a high speed chase, "he did take the helm, he did not stop the boat immediately; it was only after he was also pepper sprayed that he brought the boat to a standstill." R4:155. The only eye-witness that testified explained that these events occurred almost simultaneously:

> After [Garcia-Santos] was pepper sprayed, he just took his hands off the wheel and the throttles, and that is when the second operator [Rodriguez-Lopez] took control of the boat, and then [Garcia-Santos] moved to the stern of the boat . . . And then again that operator [Rodriguez-Lopez] made a turn towards the Customs vessel and he in turn got pepper sprayed, and after he got sprayed he just brought the boat down and came what we call "dead in the water."[5]

Furthermore, the district court specifically declined to make a finding that Rodriguez-Lopez had attempted to ram the Coast Guard vessel.

The de minimus evidence here simply does not support a finding by a preponderance of the evidence that Rodriguez-Lopez "recklessly creat[ed] a substantial risk of death or serious bodily injury to another person." Indeed, the

---

[4]The government has not argued below that the dangerous actions taken by Garcia-Santos should be imputed to Rodriguez-Lopez and the district court never attempted to do so. Nor does this record contain facts that indicate that such action would be appropriate.

[5]Testimony of Ernest Ramos, Petit Officer of United States Coast Guard, R4:21.

14

facts make clear that in the brief moments he was at the helm, Rodriguez-Lopez safely brought the dangerous chase to an end.

Even if we view the evidence in the light most favorable to the government, the factual record does not provide enough clarity regarding Rodriguez-Lopez's actions in those brief moments to warrant such a dramatic increase in his sentence. In this case, the bite from the sentencing enhancement has proven to be far more venomous than the base sentence. Rodriguez-Lopez's crime, to which he plead guilty, was a misdemeanor attempt to reunite his family by traveling to Cuba with his co-defendant to bring his wife, daughter and some friends to the United States.[6] Given Rodriguez-Lopez's cooperation with authorities, he would be eligible for probation in combination with home or community detention if it were not for the application of the sentencing enhancement now on appeal.[7] That enhancement requires Rodriguez-Lopez to serve at least an eighteen-month sentence. Because I

---

[6]Rodriguez-Lopez pled guilty to three misdemeanor alien smuggling counts in violation of 8 U.S.C. § 1324(a)(2)(A) and 18 U.S.C. § 371.

[7]The reckless endangerment enhancement resulted in a six-level increase in Rodriguez-Lopez's offense level from 12 to 18, and, after a three-level adjustment for acceptance of responsibility, his offense level was 15. Because he has a Criminal History Category of I, the applicable sentencing guideline range was 18 to 24 months in prison. Without the enhancement for reckless endangerment his offense level would have been 9, with an applicable guideline range of 4-10 months imprisonment, or in lieu of imprisonment, a term of probation that includes a condition of home detention or community confinement. See U.S.S.G.§ 5C1.1 (c)(3).

15

do not believe the record supports the application of such a drastic enhancement, I

respectfully dissent.