United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 5, 2007**

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

_____

m 05-41771

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ALEJANDRO PINEDA-JIMENEZ,

Defendant-Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JUAN RIVAS-ALVAREZ,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Eastern District of Texas
m 4:05-CR-40

_____

Before KING, HIGGINBOTHAM, and SMITH,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Alejandro Pineda-Jimenez and Juan Rivas-Alvarez appeal their convictions of violating 8 U.S.C. § 1324(a)(1)(A)(v)(I) (conspiracy to harbor and transport illegal aliens for financial gain), 8 U.S.C. § 1324(a)(1)(A)(ii) (harboring and transporting illegal aliens for financial gain), and 8 U.S.C. § 1325(a) (improper entry by an alien). Rivas-Alvarez also appeals a two-point enhancement pursuant to U.S.S.G. § 2L1.1(b)(5) for reckless endangerment of the lives of persons being transported. We affirm in part and vacate and remand for resentencing in part.

## I.

State troopers Price and Kernell stopped defendants on Interstate 30 near Sulphur Springs, Texas, after observing that their pickup truck did not have a front license plate. When asked for identification, Pineda-Jimenez, who had been driving, produced an identification card issued by the Mexican consulate, but a record check on that identification revealed that he had not been issued a driver's license by any state. The troopers informed Pineda-Jimenez that he would be issued a ticket for driving without a license. Rivas-Alvarez was sitting in the passenger seat; he produced no identification and misleadingly identified himself as "Juan Diego."

The officers observed four other persons in the rear seat of the extended cab and be-came suspicious when defendants provided conflicting accounts of the identities of those other passengers; Rivas-Alvarez described the female passengers as "wives," but Pineda-Jimenez stated that they were friends of Rivas-Alvarez. Both defendants initially claimed to be visiting friends but then stated that they were traveling to look for work; they did not appear to have luggage suggestive of a trip to visit friends. They also gave conflicting accounts of their ultimate destination. The officers obtained consent to search the truck.

Inside the truck the officers discovered a fake driver's license bearing the name of "Melito Gomez" and an insurance policy on the truck, issued to the person purportedly identified by the fake driver's license. The insurance policy listed one of the truck's customary drivers as "Juan," and the vehicle was registered in the names of Marco and Reynaldo Gomez.

Price opened the camper top covering the truck's bed and discovered nine persons, who had not attempted to exit the truck during the stop and had made no sound that might have alerted the officers to their presence. The bed of the truck contained no seats, restraining devices, or safety modifications; there was no food or water.

Rivas-Alvarez denied that the occupants of the bed were illegal aliens but, after a Spanish-speaking officer arrived to assist with questioning, the occupants of the bed admitted to being illegal aliens who had walked across the U.S.-Mexico border and made their way to Dallas. They stated that they did not know either defendant but had been told by third parties, while in Dallas, to get into the truck.

After the truck and all of its occupants had been transported to the sheriff's office, the occupants were questioned by officials from the

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Department of Homeland Security; all thirteen passengers admitted they were illegally present in the United States and were deported. Homeland Security officer Daryl Stanley inspected the pickup at the station and determined that it had been recently outfitted with "air shocks." He testified that installation of such shocks was consistent with smuggling activity, because they can be used to disguise that a vehicle is carrying a heavy load.

Stanley also discovered papers listing phone numbers and addresses of the passengers and reflecting payment for transport. Stanley testified that Pineda-Jimenez was carrying about $25-$30 on his person at the time of the stop, Rivas-Alvarez about $200. Rivas-Alvarez told Homeland Security Special Agent Padilla that he had entered the United States illegally, but that statement was suppressed before trial pursuant to *Edwards v. Arizona*, 451 U.S. 477 (1980).

Stanley testified that, when a foreign national enters the United States, a so-called "A-File" is created. All documents and records pertaining to that person's entry and further contact with the United States are placed in that file. The United States had no A-files for either defendant.

The government also presented deposition testimony of Jose Canada-DeLuna, one of the passengers traveling in the bed of the pickup, who said he had illegally entered the United States and had gone to Phoenix, Arizona, then to Dallas and had agreed to pay $1,800 to be smuggled to his destination within the United States. He and the other aliens in the pickup stayed in a hotel room for one night, then were told by an unknown individual to get into the pickup that was eventually pulled over by Price.

The defense offered deposition testimony from two other passengers indicating that they could not identify the defendants as drivers of the vehicle and had not paid to be smuggled into the United States. The government attempted to impeach that testimony by showing other parts of their depositions.

II.

The defendants were convicted by a jury of all the charges. Pineda-Jimenez was sentenced to twenty-seven months' imprisonment for the conspiracy and harboring convictions and six months for the illegal entry conviction, to be served concurrently. Rivas-Alvarez was sentenced to thirty months' imprisonment for the conspiracy and harboring convictions and six months for illegal entry, to be served concurrently.

III.

A.

Defendants contend the evidence was insufficient to support conviction. We disagree. We review challenges to sufficiency of the evidence to determine whether a reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt. *United States v. Mergerson*, 4 F.3d 337, 341 (5th Cir. 1993). We view the evidence in the light most favorable to the verdict but will reverse a conviction if the evidence gives equal or nearly equal support to a theory of guilt or innocence. *See United States v. Salazar*, 66 F.3d 723, 728 (5th Cir. 1995).

B.

There was ample evidence to convince a reasonable jury that defendants were engaged in a conspiracy to transport illegal aliens for financial gain and that they did so. Pineda-Jimenez was driving a truck full of illegal aliens. Although Rivas-Alvarez was not driving at the time of the stop, the jury could infer that

3

he was in control of the operation. He was carrying a large amount of cash, but no one else in the vehicle had means to purchase food, gas, or supplies.

Although the front seat could have comfortably accommodated an additional passenger, defendants sat alone while the other passengers were huddled into the back of the truck's cab or hidden under the covering of the truck's bed. The vehicle had been modified in a manner conducive to smuggling, and the fraudulent registration and identification indicated that this was an organized smuggling enterprise.

Canada-Deluna testified that he had paid $1,800 to be transported to his destination in the United States and that pursuant to that agreement, he had been housed in a hotel in Dallas and told to get into the truck in which defendants were apprehended. None of the illegal aliens in the truck had any personal relationship with either defendant. A reasonable jury could have found that defendants demonstrated their guilty knowledge that their passengers were illegally present in the United States by telling inaccurate and conflicting stories about them, falsely claiming that they were "wives" or friends of Rivas-Alvarez.

In sum, a reasonable trier of fact, looking at all the evidence, could have inferred that, beyond a reasonable doubt, there was at least an implicit agreement between defendants to transport illegal aliens for financial gain. Such an implicit agreement is sufficient to sustain the conspiracy conviction. *See United States v. Robertson*, 659 F.2d 652, 656 (Former 5th Cir. Oct. 1981). Likewise, the evidence was sufficient to sustain both defendants' convictions for harboring and transporting illegal aliens for financial gain.

## IV.

The evidence was sufficient to sustain the convictions of illegal entry by an alien. The identification that Pineda-Jiminez provided identified him as a citizen and national of Mexico. Producing that identification constituted an admission of alienage. A reasonable jury, looking at that admission and the fact that there was no A-File documenting Pineda-Jimenez's entry into the United States, could have inferred that he was guilty of illegal entry beyond a reasonable doubt.

Although Rivas-Alvarez's admission of alienage and illegal entry was suppressed, there was testimony that he had been in the United States for only two or three years. There was no A-File documenting his entry, and he provided no identification establishing any lawful residence within the United States. Rivas-Alvarez's suggestion that he is not guilty of improper entry because, rather than eluding authorities at the border, he lied to and misled them, is inconsistent with the absence of any A-file reflecting his entry. On this record, a reasonable jury could have inferred that he was guilty of illegal entry beyond a reasonable doubt.

## V.

Rivas-Alvarez challenges the two-point sentencing guidelines enhancement for recklessly endangering the passengers in the pickup truck. We review a district court's interpretation and application of the sentencing guidelines *de novo* and its factual findings for clear error. *United States v. Zuniga-Amezquita*, 468 F.3d 886, 888 (5th Cir. 2006).

The record established that there were six passengers in the interior, passenger portion of the pickup truck, two in the front seat and four in the back seat, which was consistent with the rated capacity of the vehicle. There were nine

4

persons in the bed of the truck under the camper cover.

The government provided insufficient support for the enhancement. The number of seated passengers was not above the rated capacity. There was no showing of special danger to those in the bed of the truck. It is true that in *United States v. Cuyler*, 298 F.3d 387 (5th Cir. 2002), we upheld the enhancement where there were seven undocumented aliens in the cab (one more than the number of seat belts) and four aliens in the truck's bed. The facts are distinguishable. In *Cuyler* there was no camper cover to protect the occupants in the bed, so they "easily can be thrown from the bed of the pickup in the event of an accident." *Id.* at 391.[1]

It is conceivable that in this case (or in other future cases) the government can make a showing as to the specific dangers facing those who are riding in the bed of a truck covered by a camper shell, but here the government did not make such a showing. For that reason alone, Rivas-Alvarez's sentence must be reformed.

The judgment of sentence of Pineda-Jimenez is AFFIRMED. The judgment of sentence of Rivas-Alvarez is VACATED and REMANDED for resentencing.

---

[1] *Contra United States v. Luna-Moreno*, 10 Fed. Appx. 638, 639 (9th Cir. 2001) (authorizing the increase where there were ten persons in truck bed protected by camper shell).