JAMES L. DENNIS,
Circuit Judge' dissenting:
The majority opinion holds that an offense that consisted of stopping a pickup truck, loading undocumented immigrants into the cab and bed of the truck, and “attempting to reverse” before stopping the truck involved “intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person.” The fact that convinces the majority that risk of serious injury or death was present in this case is the fact that, had he not been caught by law enforcement, Maldonado-Ochoa could have driven the truck “a considerable distance.” Slip op. at 538. Because the majority opinion fails to consider whether a substantial risk was actually created in the course, of Maldonado-Ochoa’s particular offense, as our precedent requires, I respectfully dissent.
Fifth Circuit precedent provides that “[t]he contours of [the § 2L1.1] sentencing enhancement depend on a careful application of the guidelines on a case-specific basis” and its application “requires a fact-specific inquiry.” United States v. Zuniga-Amezquita, 468 F.3d 886, 888-89 (5th Cir. 2006). We have explained that “a substantial risk requires a strong probability that the event ... will occur.” Rodriguez v. Holder, 705 F.3d 207, 213 (5th Cir. 2013); see also United States v. Lackey, 617 Fed. Appx. 310, 314 (5th Cir. 2015) (citing Rodriguez in the context of sentencing enhancements). In United States v. Cuyler, 298 F.3d 387, 391 (5th Cir. 2002), the first Fifth Circuit case to consider the application of § 2L1.1 to the transportation of persons in the bed of a pickup, we clarified that “the issue is whether this particular offense ‘intentionally or recklessly creat[ed] a substantial risk of death or serious bodily.injury to another person.’” (Emphasis added, alteration in original).
The relevant caselaw demonstrates how a fact-specific analysis should unfold. In Cuyler, we considered the application of the § 2L1.1 enhancement to an offense that involved driving undocumented immigrants on the highway in the bed of a pickup. Id. at 388-89. Before concluding that the enhancement properly applies “to the smuggling-of aliens in the bed of a pickup , truck while driving on the highway,” we observed that “[ajliens who are unrestrained easily can be thrown from the bed of the pickup in the event of an accident or other driving maneuver of the sort that is unavoidable in highway driving.” Id. at 391. In other words, we analyzed the risks inherent in the activity actually engaged in to determine whether the offense “involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person.” § 2L1.1(b)(6).
In United States v. Angeles-Mendoza, 407 F.3d 742, 751 (5th Cir. 2005), we stated that Cuyler “dictates that the adjustment .is appropriate where the smuggled aliens are transported in the bed of a pickup truck.” However, a closer review of that opinion reveals that we did not simply apply a per se rule. Rather, we examined the facts of the offense and concluded, “Over the long distances that the aliens were transported in this operation, there existed the similar, substantial risk that the aliens might ‘be thrown from the bed *540 of the pickup in the event of an accident or other driving maneuver of the sort'” Id. at 751 n.17 (quoting Cuyler, 298 F.3d at 391). And in United States v. Mendoza, 412 Fed.Appx. 708, 709 (5th Cir. 2011), we held that the appellant “ha[d] not shown his case to be distinguishable from Cuyled’ because, “[although [he] traveled only a short distance[1] with the unsecured aliens, the potential for an accident still existed.”
In this case, the potential for an accident did not exist. The Government has the burden of proving by a preponderance of the evidence the facts necessary to support the § 2L1.1(b)(6) enhancement. United States v. Rodriguez, 630 F.3d 377, 380 (5th Cir. 2011). Yet while the Government’s brief states that “the risk of harm to an unsecured person travelling any distance in the bed of a pickup truck is inherent due to the possibility of an accident or other injury,” the Government did not attempt to show that a substantial risk of death or serious bodily injury is created when a vehicle merely “attempt[s] to reverse.” The majority opinion’s theory that, “[h]ad the agents not been there, [Maldonado-Ochoa] would have driven the truck a considerable distance,” slip op. at 538, is irrelevant: our precedent requires us to look at the offense as it was committed, not as it might have been. See Cuyler, 298 F.3d at 391.
As explained above, “a substantial risk requires a strong probability that the event ... will occur.” Rodriguez, 705 F.3d at 213 (emphasis added). The undisputed factual record states that the truck “appeared to be attempting to reverse before it stopped,” but that “as the vehicle started to move, agents activated emergency lights and were able to stop the vehicle.” Such minimal movement simply does not create a “strong probability” that death or serious bodily injury will result.
Maldonado-Ochoa’s actual offense did not involve intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person. In direct contradiction of our precedent, the majority opinion reaches a contrary result by imagining how a risk could have manifested under different circumstances rather than by looking at the facts of the offense itself. I respectfully dissent.

. It is not clear exactly how far the defendant traveled in Mendoza. However, the PSR’s description of the route taken by the defendant reveals that the distance travelled was more than de minimis. See PRS at 3-4, United States v. Mendoza, No. 2:09-cr-00737-AM (W. D. Tex., 2010).