United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 15, 2006**

Charles R. Fulbruge III
Clerk

REVISED APRIL 17, 2006

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-41757

UNITED STATES OF AMERICA

            Plaintiff - Appellee

    v.

JULIAN RODRIGUEZ-MESA

            Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before KING, BARKSDALE, and PRADO, Circuit Judges.

PER CURIAM:

     Defendant-appellant Julian Rodriguez-Mesa pleaded guilty to one count of transporting an alien and was sentenced to nineteen months in prison and two years of supervised release. The question presented in this appeal is whether the district court, in sentencing Rodriguez-Mesa, erred in applying the enhancement for "intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person" for Rodriguez-Mesa's transportation of an illegal alien. See U.S. SENTENCING GUIDELINES MANUAL § 2L1.1(b)(5) (2003) [hereinafter U.S.S.G.].

-1-

Although we conclude that the district court did not err in applying the Guidelines, we must nevertheless VACATE and REMAND for resentencing in light of United States v. Booker, 543 U.S. 220 (2005).

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 7, 2004, Julian Rodriguez-Mesa drove a Plymouth Voyager minivan to the Sarita, Texas border patrol checkpoint.[1] After observing that Rodriguez-Mesa appeared to be nervous, the border patrol agent at the primary inspection point directed him to a secondary inspection for further investigation. At the secondary inspection, agents discovered a male occupant, later identified as Rosendo Ponce-Mata, a citizen of Mexico, in a compartment that had been built in the center console of the minivan. The compartment was located between the front seats of the vehicle, and there was a door located on top of the compartment. The compartment covered half of Ponce-Mata's body, including his head and his torso, but his legs extended on to the floorboard of the front passenger's side of the vehicle.

Rodriguez-Mesa and Ponce-Mata were advised of their Miranda rights and both agreed to make statements to the border patrol agents. Rodriguez-Mesa admitted that he was transporting Ponce-Mata in order to rid himself of a $400 debt that he owed to a man

_____

[1] Rodriguez-Mesa was accompanied by Annie Rojas, who rode in the front passenger's seat. Rojas was processed and released at the checkpoint.

-2-

by the name of Ricardo Garcia of Houston, Texas.  Rodriguez-Mesa stated that he picked up the minivan from Garcia and that Ponce-Mata was already inside the vehicle when he took possession of the minivan.

In his statement, Ponce-Mata told the agents that he had crossed into the United States illegally, without documentation, and that he had made arrangements to be smuggled from Mexico to Houston for $2000.  Ponce-Mata claimed that when Rodriguez-Mesa picked him up on July 7, 2004, Rodriguez-Mesa instructed him to hide in the compartment located in the center console of the minivan.[2]  In his sworn deposition on August 3, 2004, Ponce-Mata gave a similar account to what he had earlier told the border patrol agents, but he added that he was not endangered by being transported in the minivan's console area.  He testified that he was not locked in the compartment, had enough air to breathe, and was able to feel the vehicle's air conditioning system.

On July 28, 2004, Rodriguez-Mesa was charged in a one-count indictment with transporting an illegal alien in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (B)(ii).  The indictment also contained an additional section entitled "Aggravating Factor."  This section alleged that Rodriguez-Mesa "intentionally or recklessly created a substantial risk of death or serious bodily

---

[2]  Rodriguez-Mesa refuted this statement at his rearraignment hearing, instead asserting that Ponce-Mata was already inside of the compartment when he picked up the minivan.

injury to another person" in violation of U.S.S.G. § 2L1.1(b)(5). Without a written plea agreement, Rodriguez-Mesa pleaded guilty to the alien transporting charge, but he refused to plead guilty to the aggravating factor alleged in the indictment.[3]

---

[3] At his rearraignment hearing, the following exchange occurred between Rodriguez-Mesa and the district court in discussing his guilty plea:

| THE COURT: | [W]hat is your plea to Count 1, guilty or not guilty? |
|---|---|
| DEFENSE COUNSEL: | Guilty, he'll say, except for the aggravating factor. |
| THE COURT: | I'm not asking you to plead, [Defense Counsel]. Is this guilty or not guilty, Mr. Mesa? |
| RODRIGUEZ-MESA: | Guilty, except for the aggravating factor, Your Honor. |
| THE COURT: | Are you pleading guilty because you are in fact guilty? |
| RODRIGUEZ-MESA: | Of the smuggling, yes, ma'am. Not of the aggravating factor. |
| THE COURT: | Pardon? |
| RODRIGUEZ-MESA: | I'm pleading guilty to the smuggling of the illegal alien, but I don't feel that I'm guilty about the aggravating factor. |
| THE COURT: | Why is that? |
| RODRIGUEZ-MESA: | He could have gotten up any time he wanted to. He wasn't in danger. He was--he could breathe. He had--he was actually sleeping. He had like a-- |
| THE COURT: | Did he have a seat belt down there? |

In the Presentence Report ("PSR"), the probation officer made the following sentencing recommendations:  The base offense level was 12, U.S.S.G. § 2L1.1(a)(2); six points were added because during the commission of the offense, Rodriguez-Mesa "recklessly created a substantial risk of death or serious bodily injury to another person by concealing an illegal alien in the console area of the transport vehicle," U.S.S.G. § 2L1.1(b)(5); and three points were subtracted for acceptance of responsibility, U.S.S.G. § 3E1.1(a).  Based on these adjustments, the probation officer recommended a total offense level of 15.  With Rodriguez-Mesa's criminal history category of I, the recommendation resulted in a guideline imprisonment range of eighteen to twenty-four months.

Rodriguez-Mesa filed written objections to the PSR, disputing the six-level enhancement under U.S.S.G. § 2L1.1(b)(5) on two grounds.  First, he contended that, under Blakely v. Washington, 542 U.S. 296 (2004), the enhancement violated his Sixth Amendment right to a jury trial because the judge used facts not admitted by him or proven to a jury beyond a reasonable doubt.  Second, he argued that the enhancement for reckless endangerment was not supported by the facts.  He alleged, as support, that Ponce-Mata's sworn deposition showed that Ponce-

RODRIGUEZ-MESA:     No, ma'am.

2 R. at 21-22.

-5-

Mata was not in any danger, had enough air to breathe, and could have opened the lid to the compartment at any time.

In an addendum to the PSR, the probation officer maintained that the increase was applicable, stating that

> [i]n respect to the Blakely objection, objections which deal with the constitutionality of a case will be addressed by the Court at sentencing. As per the reckless endangerment adjustment [pursuant to U.S.S.G. § 2L1.1(b)(5)], the defendant was transporting an illegal alien in a compartment built into the center console area of the transport vehicle. Had an accident occurred, the illegal alien would not be in a position to free himself.

The district court overruled Rodriguez-Mesa's objections to the PSR at sentencing. In rejecting Rodriguez-Mesa's Blakely objection, the district court stated that it had to "go with the law of the Circuit"[4] and concluded that Rodriguez-Mesa was not entitled to a jury trial on the adjustment for reckless endangerment but that it would "make a finding, if any, by beyond a reasonable doubt." After considering Ponce-Mata's sworn deposition and photographs of the compartment and Ponce-Mata in the compartment,[5] the district court also rejected Rodriguez-Mesa's objection to the reckless endangerment enhancement under U.S.S.G. § 2L1.1(b)(5). Specifically, the district court found

---

[4] See United States v. Pineiro, 377 F.3d 464, 465 (5th Cir. 2004) (holding that "Blakely does not extend to the federal Guidelines"), vacated, 543 U.S. 1101 (2005).

[5] Rodriguez-Mesa does not dispute the accuracy of the photographs that the government submitted as evidence.

-6-

that the console was not designed for passenger use,[6] the console looked like it was the same size as from the factory, and Ponce-Mata's "head and upper body were stuffed in the console, and his feet were twisted around underneath the glove compartment."[7]  The district court concluded that the reckless endangerment enhancement should apply, "find[ing] beyond a reasonable doubt that Mr. Rodriguez-Mesa created a substantial risk of serious bodily injury by transporting an illegal alien in that fashion." On December 15, 2004, the district court sentenced Rodriguez-Mesa to nineteen months in prison and two years of supervised release.

Rodriguez-Mesa now appeals, arguing that: (1) the district court erred in applying a six-level enhancement under U.S.S.G. § 2L1.1(b)(5); and (2) this court should vacate and remand for resentencing because he raised a <u>Blakely</u> objection at the district court and the government has failed to prove that the error was harmless beyond a reasonable doubt.

## II. STANDARD OF REVIEW

Although the Supreme Court in <u>Booker</u> excised and struck down the statutory provisions that made the Sentencing Guidelines

---

[6] <u>See</u> 3 R. at 11 ("Well, sticking his head through the center console and wrapping his legs around the center console is not a position, is not any way designed the way he was using this for passenger use.").

[7] According to Ponce-Mata's sworn deposition, he is five feet, six inches, weighing 170-180 pounds.

mandatory,[8] "a district court is still <u>required</u> to calculate the guideline range and consider it advisory."  <u>United States v. Angeles-Mendoza</u>, 407 F.3d 742, 746 (5th Cir. 2005) (citing <u>Booker</u>, 543 U.S. at 245-46, and <u>United States v. Mares</u>, 402 F.3d 511, 518-19 (5th Cir. 2005), <u>cert. denied</u>, 126 S. Ct. 43 (2005)). After <u>Booker</u>, we continue to review the district court's interpretation and application of the Guidelines de novo and its factual determinations for clear error.  <u>United States v. Solis-Garcia</u>, 420 F.3d 511, 513-14 (5th Cir. 2005); <u>see also</u> <u>United States v. Villanueva</u>, 408 F.3d 193, 203 n.9 (5th Cir. 2005) (noting that this court continues to review factual findings with respect to the application of adjustments under the Guidelines for clear error), <u>cert. denied</u>, 126 S. Ct. 268 (2005); <u>United States v. Villegas</u>, 404 F.3d 355, 359 (5th Cir. 2005) (concluding that this court continues after <u>Booker</u> to review the district court's interpretation and application of the Guidelines de novo).[9]

---

[8]  <u>Booker</u>, 543 U.S. at 259 (severing and excising "the provision that requires sentencing courts to impose a sentence within the applicable Guidelines range (in the absence of circumstances that justify a departure)") (citing 18 U.S.C. § 3553(b)(1)).

[9]  There was some discussion at oral argument regarding <u>Solis-Garcia</u>'s impact on our standard of review.  In <u>Solis-Garcia</u>, this court noted that the standard of review has not changed since <u>Booker</u>.  See <u>Solis-Garcia</u>, 420 F.3d at 513-14 (noting that this court continues to apply the same standard of review to a sentence imposed under the Guidelines that we applied prior to <u>Booker</u>, i.e., we review the district court's interpretation of the Guidelines de novo and the district court's

Section 2L1.1(b)(5) provides that a defendant's base offense level must be at least 18 "[i]f the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person . . . ." U.S.S.G. § 2L1.1(b)(5). The commentary to § 2L1.1(b)(5) explains that

> [r]eckless conduct to which the adjustment from subsection (b)(5) applies includes a wide variety of conduct (e.g., transporting persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous, or inhumane condition).

U.S.S.G. § 2L1.1(b)(5) cmt. n.6.[10] Besides the latter part of the commentary, which mentions harboring persons in a dangerous condition, nothing in the commentary directly speaks to transporting an alien in a compartment located inside of a vehicle. See id. Although the factual scenario in this case is not expressly included in this list of reckless conduct, this

---

factual determinations for clear error). Because there was no factual dispute regarding the facts necessary to support the enhancement in Solis-Garcia, see id. at 514, the only question before the court was the application question--i.e., "[w]hether Solis's conduct in transporting the illegal aliens qualifies as 'intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person' as required for a § 2L1.1(b)(5) sentence enhancement"--which was, under our standard of review, considered de novo. Id.

[10] "[C]ommentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline." Stinson v. United States, 508 U.S. 36, 38 (1993).

court has not limited § 2L1.1(b)(5) to the examples mentioned in the commentary.  See United States v. Garcia-Guerrero, 313 F.3d 892, 896 (5th Cir. 2002) (stating that "[t]he commentary expressly states that the adjustment applies to 'a wide variety of conduct'").

We have not found any published opinions that address the particular circumstances created by Rodriguez-Mesa in transporting an illegal alien in a compartment concealed between the front passenger's seats.  Most of our decisions addressing the application of § 2L1.1(b)(5) involve transporting aliens unrestrained in the bed of a pickup truck or in an overcrowded vehicle without seats or seatbelts.  See, e.g., Angeles-Mendoza, 407 F.3d at 750-51 (concluding that the adjustment under § 2L1.1(b)(5) was appropriate where the "defendants smuggled aliens in the back of their truck and modified the vehicle to allow more smuggled aliens to fit in by removing the back seats"); United States v. Cuyler, 298 F.3d 387, 391 (5th Cir. 2002) (holding that the defendant's act of transporting four aliens in the bed of a pickup truck recklessly created a substantial risk of injury to the aliens); id. at 390-91 (citing numerous circuit courts holding that § 2L1.1(b)(5) applies in cases where the defendant smuggled aliens in an overcrowded van, often without seats or seatbelts).

These cases are not particularly relevant here.  Although Ponce-Mata was not wearing a seatbelt, in view of the fact that

he was transported in a compartment located between the front passenger's seats, it seems less likely that Ponce-Mata would have been thrown from the vehicle in the event of an accident. Cf. Solis-Garcia, 420 F.3d at 516 (noting that transporting illegal aliens without requiring them to wear seatbelts is not by itself enough for the § 2L1.1(b)(5) enhancement). In addition, Ponce-Mata was positioned directly beside Rodriguez-Mesa and could have communicated any discomfort he may have experienced or in the case of an emergency. These factors distinguish this case from many of the cases cited above and from the examples cited in the commentary. See U.S.S.G. § 2L1.1(b)(5) cmt. n.6; see also Cuyler, 298 F.3d at 390-91.

The parties both point to Solis-Garcia--our most recent published decision addressing the application of U.S.S.G. § 2L1.1(b)(5)--as relevant and helpful in deciding whether the district court in the present case erred. In Solis-Garcia, this court held that "the act of transporting four aliens lying in the cargo area of a minivan, with no aggravating factors, [does not] constitute[] an inherently dangerous practice such as to create a substantial risk of death or serious bodily injury to those aliens." 420 F.3d at 516 (emphasis added). In support of its holding, the court contrasted the facts in Solis-Garcia with those in Cuyler, 298 F.3d at 388-89. The court noted that unlike an individual riding in the bed of a pickup truck who is not protected by the passenger compartment of the vehicle, see

-11-

Cuyler, 298 F.3d at 391, "[a]n individual riding in the cargo area of a minivan has access to oxygen, is not exposed to extreme heat or cold, and can easily extricate himself from his position on the floor of the van." Solis-Garcia, 420 F.3d at 516. The court also rejected the idea that § 2L1.1(b)(5) punishes offenders simply for transporting illegal aliens without requiring them to wear seatbelts. Id. ("The § 2L1.1(b)(5) enhancement as written, one would think, does not extend so far as to increase punishment for offenders simply for transporting illegal aliens without requiring them to wear seatbelts."). Recognizing that the contours of § 2L1.1(b)(5) are dependent upon carefully applying the guideline in a case-by-case analysis, the court concluded that the defendant did not create a substantial risk of death or serious bodily injury. Id.

Rodriguez-Mesa argues that the holding and reasoning of Solis-Garcia apply with equal force to his case and militate against the district court's application of the reckless endangerment enhancement. He contends that there is no meaningful distinction between his case and Solis-Garcia because Ponce-Mata had access to oxygen, was not exposed to extreme heat or cold, and could easily extricate himself from his position on the floor of the minivan. See id. In contrast, the government claims that Solis-Garcia stands for the proposition that the reckless endangerment enhancement does not apply to transporting illegal aliens who are not wearing seatbelts without proof of

-12-

additional aggravating factors.  According to the government, this case involves aggravating factors that were not present in Solis-Garcia, thereby distinguishing it from the instant case.

We agree with the government that this case is distinguishable from our recent opinion in Solis-Garcia.  Here, unlike Solis-Garcia, Ponce-Mata could not have easily extricated himself from a position where "his head and upper body were stuffed in the console, and his feet were twisted around underneath the glove compartment."  Cf. id. (stating that an individual riding in the cargo area of a minivan "can easily extricate himself from his position on the floor of the van").  That Ponce-Mata was required to maintain this contorted position on the floor of the minivan (for at least an hour before the checkpoint and potentially for another 250 miles from the checkpoint to Houston), with the upper half of his body stuffed into the console and his arms pinned to his sides, suggests exposure to a "substantial risk of . . . serious bodily injury."  See Cuyler, 298 F.3d at 390 (stating that the illegal aliens who were unrestrained in the bed of the pickup truck "almost certainly would have been injured in the event of an accident").  Contrary to Rodriguez-Mesa's assertions, the photographs indicate that it would have been difficult to extricate Ponce-Mata, regardless of whether the lid of the console opened easily, because of Ponce-Mata's crammed position in the compartment.  Cf. United States v. Dixon, 201 F.3d 1223, 1233 (9th Cir. 2000) ("[A]

-13-

person hiding inside a locked trunk could not extricate himself, while a person hiding in a hatchback area easily could extricate himself by pushing up the lightweight, flimsy hatchback cover.").

The presence of this additional aggravating factor--the inability of Ponce-Mata to extricate himself--distinguishes this case from <u>Solis-Garcia</u> and supports the district court's application of the reckless endangerment enhancement in this case. <u>Cf.</u> <u>Solis-Garcia</u>, 420 F.3d at 516 ("In this case, it is not asserted . . . that the aliens were subjected to any other risks."). Accordingly, based on our own "case-specific analysis," we conclude that the district court did not err in applying § 2L1.1(b)(5) to this set of facts. <u>See</u> <u>id.</u> ("Defining the contours of this enhancement is dependent upon carefully applying the words of the guideline in a case-specific analysis.").

Although we hold that the district court did not err in applying the reckless endangerment enhancement of U.S.S.G. § 2L1.1(b)(5), we must determine the effect that <u>Booker</u> has on Rodriguez-Mesa's sentence.[11] Rodriguez-Mesa argues that his sentence "runs afoul of <u>Booker</u> in two separate, though related, ways." First, he asserts that he received a sentence greater

---

[11] Here, unlike the court in <u>Villegas</u>, we must reach the <u>Booker</u> issue because we conclude that the district court did not err in applying the Guidelines. <u>Cf.</u> <u>Villegas</u>, 404 F.3d at 364-65 & n.8 (addressing "antecedent error that the district court committed by misapplying the Guidelines" and pretermitting review of alleged <u>Booker</u> error).

-14-

than that authorized by the facts admitted by him, in violation of <u>Booker</u>'s Sixth Amendment holding.  Second, he alleges "<u>Fanfan</u> error" because the district court sentenced him under the mandatory application of the Guidelines.  Rodriguez-Mesa correctly recognizes that there are two types of error addressed in <u>Booker</u>.  <u>See</u> <u>United States v. Walters</u>, 418 F.3d 461, 463 (5th Cir. 2005) ("<u>Booker</u> error is found where the district court applied the mandatory Guidelines and enhanced a defendant's sentence on the basis of facts neither admitted by him nor found by a jury beyond a reasonable doubt, in violation of the Sixth Amendment[,]" whereas "'<u>Fanfan</u> error' is found where the district court applied the mandatory Guidelines to enhance a defendant's sentence absent any Sixth Amendment <u>Booker</u> error."); <u>see also</u> <u>Villegas</u>, 404 F.3d at 364 (same).  Regardless of whether Rodriguez-Mesa's error is characterized as a <u>Booker</u> or <u>Fanfan</u> error, he preserved that error by raising a <u>Blakely</u> objection in the district court.  <u>Compare</u> <u>United States v. Garza</u>, 429 F.3d 165, 170 (5th Cir. 2005) (stating that a <u>Blakely</u> objection in the district court preserves <u>Booker</u> error and reviewing under the harmless-error standard), <u>cert. denied</u>, 126 S. Ct. 1444 (2006), <u>with</u> <u>United States v. Gonzalez-Ribera</u>, 2006 WL 319270, at *1 (5th Cir. Feb. 13, 2006) (unpublished) (stating that a <u>Blakely</u> objection in the district court preserves <u>Fanfan</u> error and reviewing for harmless error) (citing <u>Walters</u>, 418 F.3d at 463); <u>see also</u> <u>United States v. Rodriguez</u>, 433 F.3d 411, 415-16 (4th

-15-

Cir. 2006) (concluding that the defendant properly preserved his claim of Fanfan error ("statutory Booker error") by raising a timely Blakely objection at sentencing, and noting that the court's position that a Blakely objection preserves Fanfan error for harmless-error review "is consistent with the unanimous view of the nine courts of appeals to have considered the question[,]" including the Fifth Circuit).

When there is preserved Booker or Fanfan error, as here, "the only question is whether the government has met its burden to show harmless error beyond a reasonable doubt in the imposition of [the defendant's] sentence."[12] Walters, 418 F.3d at 464. Although at least one panel of this court has questioned whether the harmless beyond a reasonable doubt standard applies to a preserved Fanfan error,[13] we are bound to follow Walters,

---

[12] Although Rodriguez-Mesa argues that Booker error is structural and therefore insusceptible to harmless-error analysis, we have rejected this argument on numerous occasions. See United States v. Arnold, 416 F.3d 349, 362 n.23 (5th Cir. 2005) (rejecting the argument that Booker error is structural and insusceptible to harmless-error analysis, and stating that "[n]either Booker error nor Fanfan error is structural"), cert. denied, 126 S. Ct. 504 (2005) (citing United States v. Malveaux, 411 F.3d 558, 560 n.9 (5th Cir. 2005), cert. denied, 126 S. Ct. 194 (2005), and United States v. Martinez-Lugo, 411 F.3d 597, 601 (5th Cir. 2005), cert. denied, 126 S. Ct. 464 (2005)).

[13] See United States v. Mendoza-Blanco, 440 F.3d 264, 265 n.7 (5th Cir. 2006) (stating that although the panel must follow the panel's decision in Walters, "we note that the standard of review it applied--requiring the Government to show that preserved Fanfan error was harmless beyond a reasonable doubt-- was not contested in the case and appears to be incorrect because Fanfan error is nonconstitutional error" but deciding that "the issue is irrelevant here because the Government cannot meet

which applied the harmless beyond a reasonable doubt standard to a preserved Fanfan challenge.  See United States v. Ruiz, 180 F.3d 675, 676 (5th Cir. 1999) (noting that "this panel may not overrule or ignore a prior panel decision").  Based on the record before us, we cannot say that the error was harmless beyond a reasonable doubt because the district court did not indicate what it would have done absent the mandatory Guidelines.  Therefore, the government has not met its burden of proving that the Booker or Fanfan error was harmless beyond a reasonable doubt.

Accordingly, although we hold that the district court's application of U.S.S.G. § 2L1.1(b)(5) was warranted here, we must nevertheless vacate and remand for resentencing in accordance with Booker.  See United States v. Palomares-Alcantar, 406 F.3d 966, 968 (8th Cir. 2005) (holding that the district court's application of § 2L1.1(b)(5) was warranted, but remanding the case for resentencing under an advisory Guidelines regime).

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM Rodriguez-Mesa's conviction, VACATE Rodriguez-Mesa's sentence, and REMAND for resentencing in accordance with this opinion.

---

either burden").  Similarly, the government cannot meet either burden in the present case.  See id.